## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FRANCISCO JAVIER GUERRA,

      Petitioner,

v.                                No. CV 10-353 MV/CG

RAY TERRY,

      Respondent.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Fancisco Javier Guerra's *Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (Doc. 1) ('Petition'), Respondent's *Motion for Summary Judgment on Petitioner's Writ of Habeas Corpus* (Doc. 9) ('Motion), and Petitioner's *Response to Motion for Summary Judgment* (Doc. 12) ('Response'). Petitioner, a native of Mexico, asserts that he has been detained by the Immigration and Customs Enforcement ('ICE'), a division of the Department of Homeland Security, since August of 2009 and that his continued detention is contrary to the Supreme Court's ruling in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 6-7). Respondent contends that *Zadvydas* is inapplicable to Petitioner's situation since Petitioner is not subject to a final order of removal. (Doc. 9 at 1, 4-5). Respondent further asserts that Petitioner's challenge to his mandatory detention is without merit. (*Id.* at 5-13). Upon a review of the pleadings, the applicable, law, and otherwise being fully advised in the premises, this Court recommends that Respondent's Motion for summary judgment be **GRANTED**.

## I.    Factual and Procedural Background

Mr. Guerra entered the United States illegally in 1981, though he ultimately obtained

permanent resident alien status in March of 1990. (Doc. 1 at 4; Doc. 9, Ex. A at 2). In September of 1990, Petitioner pled guilty in California state court to a charge of Possession of Marijuana for Sale, a felony in violation of California Health and Safety Code § 11359. (Doc. 9, Ex. A at 2). Petitioner was sentenced to 68 days in jail and he was placed on probation. (Doc. 9, Ex. C at 6,7). In May of 2008, Petitioner was charged in Los Angeles Superior Court with Possession of a Controlled Substance, a felony in violation of California Health and Safety Code § 1350(a). (Doc. 9, Ex. B at 1). Mr. Guerra pled guilty to the charge in July of 2008 and he received a suspended sentence and was placed on probation for three years. (Doc. 9, Ex. B at 8-9).  Petitioner was ordered to enroll in 12 step meetings as part of his probation but he failed to go to the meetings on several occasions. (*Id.* at 11-14). A bench warrant was eventually issued for his arrest after he failed to appear in court. (*Id.*). Petitioner's probation was revoked and he was returned to prison. In August of 2009 Petitioner was sentenced to 180 days in jail due to the probation violations. (*Id.* at 16).

While Petitioner was incarcerated in Los Angeles, he was identified by ICE agents as a deportable/inadmissible alien. (Doc. 9 at 1). On August 13, 2009, after serving three months on his six month sentence for violating his probation, Petitioner was transferred into the custody of the Department of Homeland Security ('DHS'). (Doc. 1 at 4; Doc. 9 at 1-2). On August 21, 2009, Petitioner was served with a Notice to Appear by DHS wherein the Department initiated removal proceedings against Mr. Guerra. (Doc. 9, Ex. E at 1-3). Mr. Guerra was charged with deportability under the Immigration and Nationality Act § 237(a)(2)(AB)(I) ('INA') due to his criminal convictions. (Doc. 9, Ex. E at 1-3). Since being transferred to DHS' custody, Petitioner has been mandatorily detained pursuant to the 'no-

bond' provisions of § 236(c) of the INA - currently codified at 8 U.S.C. § 1226(c)(1).[1]  The no-bond provision of §1226(c)(1) provides for the mandatory detention of deportable aliens who have been convicted of certain crimes - including those involving controlled substances - for such time as removal proceedings have been initiated but not yet completed.

After being served with the Notice to Appear, a hearing before an Immigration Judge ('IJ') was scheduled for August 24, 2009. (Doc. 9, Ex. F at 1). Petitioner was unable to attend the hearing because of a medical issue. (*Id.*). The hearing was rescheduled for October 5, 2009, and on that date Mr. Guerra was served with the information and minute order regarding his 1990 and 2008 drug convictions. (Doc. 9 at 2; Ex. F at 1). Petitioner was informed that he had the burden of establishing his eligibility for relief from removal. (*Id.*). As a result, Petitioner filed an Application for Cancellation of Removal for Certain Permanent Residents on October 6, 2009. (Doc. 9, Ex. H). A hearing was set on Petitioner's Application on October 19, 2009, but the hearing was adjourned until February 24, 2010, because DHS still did not have sufficient documentation regarding Petitioner's 1990 drug arrest. (Doc. 9 at 2, Ex. F at 1).

At the February hearing the IJ reviewed all of the applicable documentation, including documents relating to Mr. Guerra's 1990 and 2008 drug convictions and a consolidated criminal history record from Los Angeles County. (Doc. 9 at 2-3, Ex. I). Based on a review of those materials, the IJ determined that Petitioner had been convicted of an

---

[1] Petitioner mistakenly asserts that he is being detained pursuant to § 237(a)(1)(b) of the Immigration and National Act - currently codified at 8 U.S.C. § 1226(a). Respondent correctly notes that Petitioner is actually being detained under the no-bond provisions of § 1226(c). (*See* Doc. 9 at 5).

Aggravated Felony and that he was therefore ineligible for relief from removal. (Doc. 9 at 3, Ex. F at 2). At the hearing Petitioner argued that he had never been convicted of Possession of Marijuana for Sale, but rather that he pled guilty only to possession of marijuana. (Doc. 9 at 3, Ex. F at 2; Ex. G). Petitioner was informed that he bore the burden of proving that he pled guilty solely to possession of marijuana and the court continued the case until April 1, 2010, so as to enable Petitioner to present such evidence. (Doc. 9, Ex. F at 2). At the April 1 hearing DHS filed an abstract of judgment and felony complaint for Petitioner's 1990 conviction, which proved that he did indeed plead guilty to the sale charge. Petitioner failed to present any evidence to the contrary. (Doc. 9, Ex. I). The IJ then ordered Petitioner removed from the United States. (Doc. 9, Ex. J).

Petitioner appealed the IJ's removal order to the Board of Immigration Appeals ('BIA') on April 8, 2010, and he also filed this pending Petition for a writ of habeas corpus on April 13, 2010. (Doc. 9, Ex. K; Doc. 1). Petitioner's appeal was heard by the BIA via teleconference on May 21, 2010, but the hearing had to be adjourned due to technical difficulties. (Doc 9, Ex. L at 3). The appeal was rescheduled for July 16, 2010, and at that hearing Petitioner indicated that he wished to obtain counsel to represent him. The BIA continued the case until August 5 so that Petitioner could retain counsel. (Doc. 9, Ex. F at 2). On August 5 Petitioner informed the BIA that he had not yet found an attorney and he requested a second continuance so that he could continue to search for counsel. The matter was adjourned until August 30, at which point Petitioner again appeared *pro se*. The BIA rejected Petitioner's appeal at the August 30 hearing and he was again ordered removed from the United States. (Doc. 9, Ex. M at 1-2). Petitioner then filed a second appeal from the order of removal on September 2, 2010. (Doc. 9, Ex. N). The BIA denied

Petitioner's second appeal on December 7th, 2010 (Doc. 14-1 at 1-3). Petitioner's order of

removal is now considered final for all administrative purposes. *See* 8 C.F.R. § 1241.1(a).[2]

## II.   <u>Legal Arguments by Parties</u>

Petitioner originally argued that his detention was unconstitutional because detention

for more than six months after issuance of a final order of removal is presumptively

unconstitutional as per *Zadvydas v. Davis*, 533 U.S. 678 (2001) (holding that detention of

an illegal alien for more than six months following a final order of removal is presumptively

unreasonable). (Doc. 1 at 6-7). Respondent argues that *Zadvydas* is not applicable

because Petitioner had not yet been issued a final order of removal. (Doc. 9 at 4-5). Rather,

Respondent states that Petitioner is being held pursuant to 28 U.S.C. § 1226(c), which

provides for the arrest and detention of certain aliens while removal proceedings are

ongoing. (*Id.* at 5-7).

Respondent contends that prolonged detention under 28 U.S.C. § 1226(c) without

a final order of deportation is constitutional. (*Id.* at 7-10). Respondent concedes, however,

that several Federal Circuit Courts of Appeals have imposed a time or reasonableness limit

on mandatory detentions under § 1226(c). (*See Id.* at 8-12 (surveying cases)). Respondent

argues that, even if a time or reasonableness limit can be applied to 1226(c) detentions,

Petitioner is not entitled to relief because the bulk of the delays in the adjudication of his

case were due to Petitioner's requests for extensions and continuances. (*Id.* at 11-12).

Petitioner, who was appointed counsel after Respondent filed the Motion for summary

---

[2] Although Petitioner's order of removal is now administratively final, the Court does not consider Mr. Guerra's Petition to be moot since Mr. Guerra can still appeal the BIA decision to the Circuit Court of Appeals in which the IJ completed the proceedings. *See* 8 U.S.C. § 1252(b)(2). Should Mr. Guerra appeal the BIA decision, he would continue to be held pursuant to § 1226(c).

judgment, acknowledges that the government has not acted in bad faith. (Doc. 12 at 3). Nevertheless, he argues that the length of his detention under § 1226(c) - which is approaching seventeen months - is unreasonable. (*Id.*). Petitioner requests that Respondent's Motion should be denied, and that an IJ conduct a release hearing. (*Id.*).

**III.   Analysis**

The Supreme Court last addressed the constitutionality of mandatory detentions under § 1226(c) in *Demore v. Kim*, 538 U.S. 510 (2003). In that case, a detainee argued that mandatory detention under § 1226(c) violated his Fifth Amendment Due Process rights and that courts should instead conduct individualized bond hearings. *Demore*, 538 U.S. at 514, 520 n. 5. The Court rejected that argument, noting that detention "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed.'" *Id.* at 528. Therefore, the Court allowed for the mandatory detention of individuals "during the limited period necessary for their removal proceedings." *Id.* at 526.

The Court's holding was partially based on statistical data regarding deportation proceedings. The Court noted that detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530. The Court then contrasted the typical length of detention under § 1226(c) against the "indefinite" and "potentially permanent" detention found in *Zadvydas. Id.* at 528. The Court ultimately concluded that the "brief period" typically associated with detentions under 1226(c) did not violate Due Process. *Id.* at 523, 530.

Justice Kennedy, however, in his concurrence, noted that aliens detained pursuant to 1226(c) may be entitled to individualized bond hearings if the detention becomes "unreasonable or unjustified." *Id.* at 532. He noted that "[w]here there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532.

Several Federal Circuit Courts of Appeals and District Courts have construed the majority opinion and Justice Kennedy's concurrence in *Demore* to hold that prolonged 1226(c) detentions may be unreasonable in certain cases. *See. e.g.*, *Ly v. Hanson*, 351 F.3d 263, 273 (6th Cir. 2003); *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005); *Alli v. Decker*, 644 F.Supp.2d 535 (M.D.Pa. 2009); *Madrane v. Hogan*, 520 F.Supp.2d 654 (M.D.Pa 2007). To determine the reasonableness of such detentions, these courts have formulated multi-factor tests considering factors such as the duration of detention, the probability of actual removal, and the conduct of both the government and the petitioner during the removal proceedings. The Tenth Circuit has yet to determine whether a § 1226(c) detention may be subject to constitutional challenge based on the length or reasonableness of the detention. (Doc. 9 at 9).

As stated above, Respondent initially contends that the holding of *Demore* does not necessarily encompass a timeliness or reasonableness limitation on 1226(c) detentions. (Doc. 9 at 7-10). Respondent further argues that, even if such limitations can be inferred from *Demore*, Petitioner is not entitled to relief since most of the delays in his case have been due to his own dilatory tactics. (*Id.* at 11-12). The Court will address both arguments

in turn.

     i.    <u>Indefinite Detention Pursuant to 28 U.S.C. § 1226(c) May Be Unconstitutional</u>

Respondent claims that prolonged detention under § 1226(c) without a final order of removal does not violate the constitution because "the period [of detention] has a definite end and that during that period, detention serves the statutory purpose of effecting the alien's eventual removal." (*Id.* at 10). This Court disagrees.

The vast majority of federal courts which have considered this question have concluded that indefinite detentions under § 1226(c) may violate due process. A review of post-*Demore* case law shows that most courts "either have determined or are moving in the direction of finding that detention of pre-final orders of removal detainees for a lengthy period may raise constitutional concerns." *Prince v. Mukasey*, 593 F.Supp.2d 727, 735 (M.D.Pa 2008). The *Prince* court further noted,

> [H]olding or detaining someone, including an alleged alien, for long periods of time without a hearing or while the government "puts its case together" goes against all of the constitutional concepts, long part of the fabric of the law of this country and the legal concepts of democracy. Thus we see a growing trend by the courts of this nation in all cases where detention is involved to require the governmental authorities to show cause why detention is necessary.

*Id.* The *Prince* court rightly noted that two Circuit Courts of Appeals and multiple District Courts have found that *Demore* encompassed a timeliness and reasonableness limitation on § 1226(c) detentions. *See, e.g. Ly v. Hanson*, 351 F.3d 263, 273 (6th Cir. 2003); *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005); *Flores-Powell v. Chadbourne*, 677 F.Supp.2d 455, 470 (D.Mass. 2010); *Alli v. Decker*, 644 F.Supp.2d 535, 539-40 (M.D.Pa. 2009) ("The *Demore* court repeatedly qualified its holding by noting that mandatory detention is constitutionally permissible for the "brief," "limited," and "temporary" period necessary for

removal proceedings . . . [indefinite] mandatory detention is inconsistent with both . . . due process . . . and the statutory purposes of the INA.").

Respondent has identified only one unpublished case out of the Third Circuit - *Jah v. Attorney General*, 258 F.App'x 394, 395 (3rd Cir. 2007) - which he contends stands for the proposition that lengthy mandatory detentions are not unconstitutional. (Doc. 9 at 9). In that case, Jah was challenging his detention under § 1226(c) after being detained without a final order of detention for approximately a year and a half. *Jah*, 258 F.App'x at 394-95. The Third Circuit rejected Jah's habeas petition in a one page opinion without conducting any reasonableness inquiry. *Id.* Considering that the *Jah* court does not explicitly stand for the proposition that lengthy or indefinite detentions under § 1226(c) is constitutional, this Court does not find Respondent's argument to be persuasive.

Almost every federal court which has considered the question has construed *Demore* to include some kind of timeliness or reasonableness restriction on § 1226(c) detentions. This Court concurs that such detentions may be subject to challenge in individual cases.

      ii     <u>Petitioner's Detention Has Not Been Unreasonably Delayed</u>

Federal courts which have found restrictions on § 1226(c) detentions have typically adopted multi-factor tests to help determine whether any given detention is in fact unreasonable. These factors encompass 1) the overall length of detention, 2) whether the detention is for a longer period than the criminal sentence for the underlying conviction, 3) whether a final order of deportation is reasonably foreseeable, 4) whether the government acted promptly to secure a final order of deportation, 5) and whether the petitioner's actions delayed the resolution of his case. *See, e.g.*, *Ly*, 351 F.3d at 271-72; *Alli*, 644 F.Supp. at

541-42 (applying a similar test). In applying these factors, the Court concludes that Petitioner's detention has not been unreasonably delayed.

The first factor identified - the overall length of the civil detention - does appear to weigh against the government. Petitioner has been detained by ICE since August of 2009, and has been detained for approximately seventeen months since he was transferred from Los Angeles. (Doc. 1 at 4; Doc. 9 at 1-2). Petitioner's detention has far exceeded the five month time period identified by the Supreme Court in *Demore* as the outside limit for most § 1226(c) detentions. *Demore v. Kim*, 538 U.S. 510, 530 (2003). The second factor - whether the detention is for a longer period than the sentence for the underlying criminal conviction - similarly weighs against the government. Petitioner's underlying conviction for possession of marijuana resulted in a suspended sentence, and his subsequent violation of the terms of his probation resulted in a six month jail term. (Doc. 9, Ex. B at 8-9, 16). Petitioner's seventeen month detention far exceeds the jail term imposed upon him. Nevertheless, the Court finds that the final three factors overwhelmingly weigh in Respondent's favor. With regard to the third factor - whether a final order of deportation is reasonably foreseeable - the Court notes that Petitioner has already received two final orders of deportation. (Doc. 9, Ex. M at 1-2; Doc. 14-1 at 1-3). Therefore, there is no doubt that the issuance of a final order of deportation is reasonably foreseeable since it has, in fact, been issued.

The fourth and fifth factors, namely the conduct of both the government and Petitioner in prompting the delay, similarly weigh in favor of the government. It appears that the bulk of the delays in this case were due to Petitioner's request for continuances, or to the government adjourning hearings so as to afford Petitioner opportunities to present

relevant evidence. The government did move expeditiously to advance its interests in this case. Deportations proceedings were commenced and a 'Notice to Appear' was served on Petitioner only eight days after he was transferred into DHS' custody.  (Doc. 1 at 4; Doc. 9 at 1-2; Doc. 9, Ex. E at 1-3). A hearing before an IJ was promptly set, but had to be delayed for several months because Plaintiff was suffering from a medical condition. (Doc. 9, Ex. F at 1). Petitioner then filed an Application for Cancellation of Removal for Certain Permanent Residents, a process which partially hinged on the determination of whether Petitioner had indeed been convicted of a specific drug offense in 1990. (Doc. 9 at 2-3, Doc. 9, Ex. F at 2; Ex. G). The resolution of Petitioner's application took five months, but more than one month of the delay was due to the IJ affording Petitioner two opportunities to present evidence that he was not convicted of possession of marijuana for sale - evidence that Petitioner never presented. (Doc. 9, Ex. F at 2; Ex. J).

Petitioner then filed two appeals to the BIA. The first BIA appeal resulted in three continuances, one of which was due to technical difficulties. (Doc 9, Ex. L at 3). The other two continuances were due to Petitioner's request that he be afforded more time to try and retain an attorney. (Doc. 9, Ex. F at 2). Petitioner was unable to retain an attorney on both occasions, and the BIA ultimately dismissed his appeal on August 30, 2010. (Doc. 9, Ex. M at 1-2). Petitioner then filed a second BIA appeal, the resolution of which took another three months. (Doc. 14-1 at 1-3).

This Court finds that the delays in the adjudication of Petitioner's case were not attributable to the government. Indeed, Petitioner's counsel concedes that the government has not acted in bad faith. (*See* Doc. 12 at 3 ("Mr. Guerra cannot argue in good faith that the government has acted unreasonably or in bad faith to this point . . .")). When delays are

11

not attributable to the government, prolonged detention does not necessarily violate due process. *Ovchinnikov v. Clark*, 543 F.Supp.2d 12665, 1266 (W.D.Wash 2008) ("Continuances granted solely for petitioner's benefit" should not count against the government in a challenge to the petitioner's detention); *see also Prince v. Mukasey*, 593 F.Supp.2d 727 (M.D.Pa 2008)

> While this Court would not, in any way, even infer that petitioners should not file appropriate documents challenging their detention or the reasons for detention, Petitioners . . . must know that their own conduct has to be included in determining whether or not a 'reasonable time' was exercised by the authorities in determining the proper response to any assertions made by either Petitioner or the Government.

*Id.* at 735-36. Because the bulk of the delays in this case were due to Petitioner's request for continuances or adjournments so that Petitioner could obtain counsel or relevant evidence, this Court finds that Petitioner's detention has not been unreasonable.

**IV**     **Recommendation**

Because the Court finds that Petitioner's detention has not been unreasonable, the Court **RECOMMENDS** that Respondent's *Motion for Summary Judgment on Petitioner's Writ of Habeas Corpus* (Doc. 9) be **GRANTED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE